UNION INSURANCE COMPANY *vs.* ARNOLD GREENLEAF.

*Premium note—negotiability of.*

When the president of an insurance company is authorized to settle or compromise all claims against the company and to sign and indorse notes, his indorsement of a premium note in liquidation of a debt which to such amount is discharged, and the amount is passed to the credit of the company and no dissent is shown, transfers the title.

A note given for the premium of a policy of insurance is not a deposit note within R. S., c. 49, § 26.

It is no defence to such note when negotiated in good faith before maturity, that the company issuing the policy has failed.

A promissory note given to an insurance company is negotiable, notwithstanding it bears on its face the number of the policy for which it was given.

ON REPORT.

ASSUMPSIT upon a promissory note dated October 17, 1872, for three hundred and twenty-six dollars, signed by Arnold Greenleaf, and payable to the order of the National Insurance Company of Bangor in twelve months after date, a copy of which is given in the opinion.

The note was given for the premium on a policy of marine insurance issued by the National Insurance Company for one year from October 17, 1872. The risk was taken at Wiscasset by the company's agent there, and the note was by him sent to the branch office of the company in Boston. Upon the fifth day of November 1872, the marine secretary of the National Company in Boston passed over to the secretary of the Union Insurance Company in Boston the note in suit together with other notes, to be credited to the National Insurance Company, on account of indebtedness then existing from the National Company to the Union Company to an amount larger than the amount of the notes so passed over, and these notes were on the same day credited to the National Company on the books of the Union Company in Boston as so much money.

There had been similar transactions on two or three previous occasions as to which no question ever arose. The notes were at once forwarded to the home office of the Union Company in Bangor, and as soon as practicable, but not until after the Boston fire, though before the proceedings in insolvency hereinafter mentioned were begun, the president of the Union Company took these notes to the president of the National Company who indorsed them, this one among the others, in the manner which appears in the opinion.

At the time of the indorsement of the notes, there were rumors that the National Company had met with losses in the Boston fire to the extent of sixty thousand dollars, which rumors had come to the ears of the president of the Union Company, who had also heard that the officers of the National Company had declared its ability and intention of continuing its business.

The losses suffered by the National Company in the Boston fire of November 8 and 9, 1872, did cause a suspension of its business, and upon the fifteenth day of November 1872, on the application of the insurance commissioner, proceedings in insolvency were commenced against the company, and an injunction issued from the supreme judicial court, which proceedings are still pend-

ing. Receivers have been appointed and other proceedings had according to the statute regulating the subject.

The policy of insurance for the premium on which the note in suit was given, was surrendered and cancelled on the fourteenth day of November 1872.

The charter and by-laws of the National Insurance Company were made a part of this case.

The plaintiffs knew that the note was given for a premium on insurance policy.

Upon these facts judgment was to be rendered according to the legal rights of the parties.

*Wilson & Woodard* for the plaintiffs.

Three questions are raised in defence. First. Had the president authority to indorse this note as he did? Second. Were there any equities between the original parties binding upon the plaintiffs? Third. Was the note anything but ordinary negotiable paper, so as to affect the plaintiffs by any subsequently arising equities between the original parties?

The counsel argued in support of the proposition that the eighth by-law of the National Insurance Company authorizing the president to assign its securities when the directors so voted, did not limit his general power to indorse its negotiable notes so as to transfer title when necessary to settle losses and pay debts, citing Flanders on Fire Ins., 178; *Baker* v *Cotter*, 45 Maine, 236, and other cases. The plaintiffs' answers to the questions arising in this cause, and their reasons for giving them sufficiently appear in the opinion of the court.

*Albert W. Paine* for the defendant.

The company to which this note was given became insolvent within a month of its date. At common law the payee could recover but one-twelfth at most of the amount, the consideration failing in that proportion. *Leary* v. *Blanchard*, 48 Maine, 269. Can the indorsee recover more at common law? Though a subordinate in one company passed it to the clerk of the other in

Boston, yet it was not indorsed till after the great fire had rendered the payee insolvent, and just before that insolvency was declared, and after the parties both knew the facts which led to this result, and therefore not *bona fide ;* or at least the burden is on the plaintiffs of showing good faith under these circumstances. 2 Greenl. on Ev., 172 ; *Munroe* v. *Cooper*, 5 Pick., 412 ; *Sistermans* v. *Field*, 9 Gray, 332 ; *Estabrook* v. *Boyle*, 1 Allen, 412 ; *Tucker* v. *Morrill*, Ib., 528 ; *Smith* v. *Edgeworth*, 3 Allen, 233 ; *Aldrich* v. *Warren*, 16 Maine, 465 ; *Perrin* v. *Noyes*, 39 Maine, 384. By the by-laws, the assent of the directors to a transfer is essential to its validity. This was a deposit note and void under R. S., c. 49, § 26, because the corporation became insolvent within sixty days of its date. A careful examination of the statutes which have been condensed in the last revision into § 26, shows that notes like the one in suit were intended to be embraced within its provisions.

APPLETON, C. J. The defendant is sued as the maker of a promissory note payable to the order of the National Insurance Company and indorsed "National Ins. Company by Hiram Ruggles, president."

By the tenth by-law of the National Insurance Company it is provided that "the promissory notes given by the company, and indorsements or assignments of the notes or securities of the company shall be made by the president."

By the eighth by-law he has "full power to settle and adjust all losses and return premiums and other claims of the company, as he shall deem to be just and expedient for the company ; to refer compromise or contest in law any demand which he may think it improper to allow." The indorsement was to ·pay a pre-existing debt which was thereby extinguished *pro tanto.* The National Insurance Company have had the benefit of it by a discharge of indebtedness. It does not appear that they have made any objections to this act of their president. The transfer was to adjust or settle an indebtedness which is not denied, and as this settlement has never been impeached, we think, notwithstanding the clause

in the same article, which authorizes him to assign or indorse notes when authorized by the directors, that having transferred the note in part payment of a debt due, and having general authority to settle adjust and compromise claims against the company, that the plaintiffs have at any rate made out a *prima facie* case, and are to be regarded as indorsees. *Cabot* v. *Given*, 45 Maine, 144; *Baker* v. *Cotter*, 45 Maine, 236; *Brown* v. *Donnell*, 49 Maine, 421. .

The note reads as follows:

"BOSTON, Oct. 17, 1872.

$326. Twelve months after date, I promise to pay to the order of the National Insurance Co., of Bangor, for value received, three hundred and twenty-six dollars, payable in Boston. No. 2207.

ARNOLD GREENLEAF."

The following memorandum is printed across the face of the note in red ink: "This note must be paid at maturity without regard to the termination of the risk."

The note was negotiable. In *Taylor* v. *Curry*, 109 Mass., 36, it was held that a promissory note given to an insurance company is not rendered unnegotiable by bearing on its face the words, "on policy No. 33,386;" although the policy contains a provision for the set-off of notes due the company, in case of a loss.

The note was indorsed before maturity. The plaintiff company had met with losses. The National Insurance Company had met with losses to less than a third of its capital. But knowledge that a loss has been made by an insurance company is not evidence of the insolvency of the company so losing. Whether the National Insurance Company transferred notes to the plaintiffs or the plaintiffs to the National Company, there was no more notice of insolvency in the one case than in the other. Either company might for aught that appears have been the indorsee of the other, and that without any impeachment of its good faith.

Shortly after the transfer of the note in suit the National Insurance Company suspended its business, an injunction issued against its further proceeding, and receivers were appointed.

Upon the fourteenth day of November, 1872, the policy for the premium on which the note in suit was given was surrendered and cancelled. But this was done after the note had been indorsed to the plaintiffs.

The defendant claims that he is within the provision of R. S., c. 49, § 26, which provides that "a policy of insurance issued by a life, fire or marine insurance company domestic or foreign, and a deposit note given therefor shall be deemed one contract; and a loss under such policy or other equitable claims may be proved in defence of a suit upon said note, though it were indorsed or assigned before it was due; and when a company becomes insolvent the maker of the note shall only be liable for the equitable proportion thereof which accrued during the solvency of the company, and if the insolvency occurs within sixty days of the date of the note it shall be void except for the amount of the maker's claim, if any, on the company," &c.

The main question for determination is whether the note in suit is a deposit note within the true meaning of this statute.

By § 25 we learn what are to be regarded as deposit notes. They are to be given for a policy and for such sum as the directors may determine. Such part as the by-laws require is to be immediately paid towards incidental expenses, and is to be indorsed thereon. The remainder is payable in such instalments as the directors from time to time require for the payment of losses and other expenses to be assessed on all who are members when such losses or expenses happen, in proportion to the amount of their notes. It is therefore uncertain what if any part of the deposit may be required to be paid. The same doubt exists as to the time when payment will be demanded.

The deposit note as described in § 25 must be the one to which reference is had in § 26. But the note in suit was no such note. It was payable at a definite time. It was to be paid irrespective of the termination of the risk for which it was given. Its payment did not depend upon assessments to be made by directors contingent in amount upon the losses of the company. It was

Union Ins. Co. v. Greenleaf.

given for the premium instead of making a payment in cash. It matters not whether the premium is paid in money or in a note on time, which is indorsed in good faith before maturity. In either case the insured risks the solvency of the insurer. He who so gives negotiable paper must abide the legal consequences of its negotiation.

The meaning of a statute is to be ascertained from its language. Undoubtedly much aid may be had by recurring to preceding legislation on the same subject. When there is a material change of language we must suppose there was a change of legislative intention. Words are to be understood as used in their customary signification, unless from the context a different meaning is apparent. If in a revision there are omissions, it is not for us to say whether those omissions are by accident or design. Still less are we to assume an omission to be accidental and then insert by construction what may have been omitted by design. Here is nothing doubtful or obscure. The note in suit cannot within the meaning of §§ 25 and 26 be regarded as a deposit note.

It is no defence to the note that the National Insurance Company has failed, it being in the hands of a *bona fide* holder. Nor can the cancellation of the policy subsequently to its indorsement lessen or destroy the rights of the holder. The note was given for a good consideration, was indorsed before its maturity in good faith, and must be paid. *Alliance Mutual Insurance Co.* v. *Swift*, 10 Cush., 433; *Cabot* v. *Given*, 45 Maine, 144.

*Defendant defaulted.*

CUTTING, WALTON, BARROWS and DANFORTH, JJ., concurred.

PETERS, J., did not sit in this case.